Harris Teeter Supermarkets, Inc. v. Ace Am. Ins. Co., 2026 NCBC 68.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
22CVS005279-330

HARRIS TEETER SUPERMARKETS,
INC., et al.,

Plaintiffs,

v.

ACE AMERICAN INSURANCE
COMPANY, et al.,

Defendants.

**ORDER AND OPINION ON MOTIONS
FOR SUMMARY JUDGMENT**

1.      **THIS MATTER** is before the Court following the 28 January 2026 filings of (1) *Defendant Insurers' Motion for Summary Judgment* (Defendants' Motion), (ECF No. 458 [Defs.' Mot.]), filed by Defendants Great American Alliance Insurance Company, Great American Assurance Company, Great American Insurance Company, and Great American Insurance Company of New York (collectively, Defendants)[1]; and (2) *Plaintiffs' Motion for Partial Summary Judgment* (Plaintiffs' Motion; and with Defendants' Motion, the Motions), (ECF No. 462 [Pls.' Mot.]), filed by Plaintiffs Harris Teeter Supermarkets, Inc. (f/k/a Ruddick Corporation) and Harris Teeter, LLC (together, Harris Teeter).

2.      Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the Rule(s)), the Motions seek summary judgment as to certain claims, counterclaims, and defenses asserted in this action. (*See generally* Defs.' Mot.; Pls.' Mot.)

---

[1] Defendants' Motion was also brought by American Guarantee and Liability Insurance Company, Zurich American Insurance Company, and XL Insurance America, Inc. (*See* Defs.' Mot. 1.) Subsequently, these insurers were voluntarily dismissed with prejudice by Harris Teeter. (*See* ECF Nos. 468–69.)

3. For the reasons set forth herein, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiffs' Motion.

*Kilpatrick Townsend & Stockton LLP by Susan H. Boyles and Elisabeth Briand, and Pillsbury Winthrop Shaw Pittman LLP by Christopher C. Caffarone, Gerald P. Konkel, and Christopher M. Popecki, for Plaintiffs Harris Teeter Supermarkets, Inc. (f/k/a Ruddick Corporation) and Harris Teeter, LLC.*

*Bennett Guthrie PLLC by Joshua H. Bennett, and BatesCarey LLP by Joshua A. Boggioni, Adam H. Fleischer, and Paige M. Houin, for Defendants Great American Alliance Insurance Company, Great American Assurance Company, Great American Insurance Company, and Great American Insurance Company of New York.*

Robinson, Chief Judge.

## I. INTRODUCTION

4. This action arises out of an insurance coverage dispute regarding whether Defendants—insurers that issued commercial general liability (CGL) policies to Harris Teeter—are obligated to compensate Harris Teeter for its purported share of liability under a global settlement agreement that resolved hundreds of lawsuits brought by governmental entities against The Kroger Co. and its affiliates and subsidiaries, including Harris Teeter, for damages allegedly caused by their distribution and dispensing of opioid drugs.

## II. FACTUAL BACKGROUND

5. The Court does not make findings of fact when ruling on a motion for summary judgment. "[T]o provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.,*

2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sep. 26, 2017); *see also Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975) (encouraging the trial court to articulate a summary of the material facts considered not at issue and justifying entry of summary judgment). The parties submitted over fourteen thousand pages of evidence to the Court in connection with the Motions, which the Court has thoroughly reviewed. However, as the Court's analysis herein is limited to a single dispositive issue, the Court only sets forth those facts that are relevant to the Court's decision.

A. **The Parties**

6. Plaintiff Harris Teeter Supermarkets, Inc. (f/k/a Ruddick Corporation) (HT Supermarkets) is a North Carolina corporation with its headquarters in Mecklenburg County, North Carolina. (J.A. 10663 at ¶ 7, ECF Nos. 475–89.)[2]

7. Plaintiff Harris Teeter, LLC (HT LLC) is a North Carolina limited liability company with its headquarters in Matthews, North Carolina. (*See* J.A. 10663 at ¶ 8.) HT Supermarkets is the sole member of HT LLC. (*See* J.A. 10723 at ¶ 4.)

8. Defendant Great American Alliance Insurance Company is an Ohio corporation with its principal place of business in Ohio and is licensed as an insurer in the State of North Carolina. (J.A. 10668 at ¶ 26; J.A. 10800 at ¶ 26.)

---

[2] The joint appendix of exhibits submitted by the parties is split across fifteen separate record filings. (ECF Nos. 475–89.) For ease of reference, the Court cites to the joint appendix as follows: (J.A. [ ] at [ ].). The Court cites using the joint appendix page number found at the top of each page.

9.     Defendant Great American Assurance Company is an Ohio corporation with its principal place of business in Ohio and is licensed as an insurer in the State of North Carolina.  (J.A. 10668 at ¶ 27; J.A. 10800 at ¶ 27.)

10.     Defendant Great American Insurance Company is an Ohio corporation with its principal place of business in Ohio and is licensed as an insurer in the State of North Carolina.  (J.A. 10668 at ¶ 28; J.A. 10800 at ¶ 28.)

11.     Defendant Great American Insurance Company of New York is a New York corporation with its principal place of business in Ohio and is licensed as an insurer in the State of North Carolina.  (J.A. 10668 at ¶ 29; J.A. 10800 at ¶ 29.)

### B.     Harris Teeter's Business

12.     Harris Teeter is a grocery store chain that operates more than two hundred and fifty (250) stores across North Carolina and surrounding states—including Delaware, Maryland, South Carolina, Virginia, and the District of Columbia—many of which include retail pharmacies that dispense prescription opioids.  (*See* J.A. 3–4 at ¶¶ 7–8; J.A. 10725–26 at ¶¶ 16–18.)

13.     Since its acquisition in January 2014, Harris Teeter has been a wholly owned subsidiary of The Kroger Co. (Kroger).  (J.A. 13389 at ¶ 6.)

14.     As a subsidiary of Kroger, Harris Teeter's financials are consolidated into a centralized treasury for the larger Kroger enterprise.  (*See* J.A. 6259–60 at 13:22–14:19.)  As part of this function, the majority of the cash across the Kroger entities is rolled up through "cash sweeps" into a centralized treasury that is used to

pay the bills of the entities. (*See* J.A. 6275 at 76:8–20; J.A. 6332 at 66:12–67:9; J.A. 6344 at 115:6–25, 117:7–23.)

## C. The Insurance Policies

15. Between 1 May 1995 and 1 May 2014, Defendants collectively issued approximately twenty-six insurance policies to Harris Teeter. (*See* J.A. 13387–89 at ¶ 5; *see also* J.A. 11505–622, 11777–856, 12013–91, 12283–354, 12497–566, 12707–79, 12931–3003, 13125–203, 13302–85.)

16. Each of the policies issued by Defendants to Harris Teeter between 2005 and 2014 provided that Defendants will

> pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere.

(*See, e.g.*, J.A. 11525; J.A. 5595 at ¶ 64.)

17. The policies each define "bodily injury" as "physical injury, sickness, or disease, including death of a person[,]" as well as mental injury, mental anguish, humiliation, and, in some instances, shock, fright, and disability. (*See, e.g.*, J.A. 11546; J.A. 5598–99 at ¶ 67.)

18. An "occurrence" with respect to "bodily injury" is defined by the policies to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]" (*See, e.g.*, J.A. 11548; J.A. 5599 at ¶ 68.)

19.     With respect to notice, each of the policies provides, in relevant part, as follows:

> 1.  You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy.  To the extent possible, notice will include:
>
>     a.  how, when and where the "occurrence" took place;
>
>     b.  the names and addresses of any injured person and witnesses;
>
>     c.  the nature and location of any injury or damage arising out of the "occurrence."
>
> 2.  If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

(*See, e.g.*, J.A. 11551; J.A. 9827–28 at ¶ 35.)

**D.     The Underlying Opioid Lawsuits**

20.     Since 2017, more than eight hundred opioid lawsuits have been brought against Kroger and certain of its subsidiaries (the Opioid Lawsuits).  (J.A. 5 at ¶¶ 12–13; J.A. 13390 at ¶ 7; *see* J.A. 69–136 (identifying lawsuits filed against Kroger and its subsidiaries as of June 2023).)  Most of the Opioid Lawsuits were filed by governmental entities asserting that Kroger and certain of its subsidiaries had caused a public nuisance through the oversupply of prescription opioids and a failure to maintain effective procedures to prevent diversion of such opioids.  (*See* J.A. 5 at ¶ 12; J.A. 556–1288.)    Many of the governmental Opioid Lawsuits were subsequently consolidated into a federal multidistrict litigation in the United States

District Court for the Northern District of Ohio (the MDL). (J.A. 7 at ¶ 16; J.A. 9673 at ¶ 7.)

21. On 19 May 2021, Harris Teeter—along with Kroger and two other Kroger subsidiaries—was added as a named defendant in a lawsuit filed by Durham County, North Carolina in the United States District Court for the Middle District of North Carolina (the Durham County Action). (J.A. 316 at ¶ 1 n.3; J.A. 13390 at ¶ 7.) The Durham County Action was eventually transferred to the MDL. (J.A. 9 at ¶ 21(a).) To date, the Durham County Action is the only opioid lawsuit in which Harris Teeter has been named as a party. (*See* J.A. 5655; J.A. 10848–49.)

22. The complaint in the Durham County Action, like most other Opioid Lawsuits, alleged that Harris Teeter and other defendants created a public nuisance by failing to maintain effective controls, policies, and procedures to guard against the diversion of prescription opioids in Durham County, "thereby exacerbating the oversupply of such drugs and fueling an illegal secondary market." (J.A. 321 at ¶ 18; *see generally* J.A. 310–555.) Durham County also alleged that, as a result of the public nuisance, the government was burdened with the extraordinary costs of responding to the opioid crisis, including "the handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarceration, treating opioid-addicted newborns in neonatal intensive care units, burying the dead, and placing thousands of children in foster care placements[.]" (J.A. 323 at ¶¶ 23–24; *see also* J.A. 548 at ¶ 750.)

23.    Durham County, through the Durham County Action, sought damages for economic losses resulting from Harris Teeter's dispensing of prescription opioids but expressly provided that it did "not seek damages for the wrongful death, physical personal injury, or serious emotional distress caused by [d]efendants' actions." (J.A. 552 at ¶ 762; *see also* J.A. 151 at ¶ 12 (noting Durham County "seeks damages for economic losses and does not bring an action for personal injury, death, or physical injury to property").)

### E.    Notice to Insurers

24.    Since 2017, Kroger, through its agents Sedgwick and Marsh, has provided periodic notice to its insurers of opioid lawsuits naming Kroger and/or its subsidiaries. (J.A. 13390 at ¶ 9.)  As part of this process, Kroger provided documents and information about recently filed Opioid Lawsuits to Sedgwick and/or Marsh, and Sedgwick and Marsh used such information to identify liability insurance policies that may apply to claims brought in the Opioid Lawsuits and to prepare notices to insurers under any policies that could provide coverage for those claims.  (J.A. 9674 at ¶ 10; *see also* J.A. 9676 at ¶¶ 13–14.)  Since Harris Teeter's acquisition by Kroger in 2014, Harris Teeter has generally relied on Kroger and/or its claims administrator to provide notice of liability claims to insurers and does not directly provide notice on its own behalf.  (*See* J.A. 9808–09 at ¶¶ 7–10.)

25.    On 7 June 2021, Sedgwick emailed certain insurers, including Defendants, attaching (1) a schedule of Kroger policies under which Sedgwick was providing notice, (2) a contact list for the insurers, and (3) a spreadsheet identifying three

lawsuits that had been filed against Kroger and certain subsidiaries, including the Durham County Action (the Notice). (J.A. 9733–50; J.A. 13390–91 at ¶¶ 10–12; *see also* J.A. 9678–79 at ¶ 17.)

26. The Notice expressly provided that "Sedgwick, *on behalf of The Kroger Co*, is tendering the opioid-related claims attached to the insurers identified on the attached Policy Schedule for defense and indemnity." (J.A. 13398 (emphasis added).)

27. The email from Sedgwick provided that it was "providing notice under the policies referenced on the Policy Schedule and any other policies that may be applicable to the claim but are not otherwise identified." (J.A. 13391 at ¶ 14; J.A. 13398.)

28. The policy schedule only identified insurance policies issued to Kroger and did not identify any insurance policies issued to Harris Teeter. (J.A. 13392 at ¶¶ 15–17; *see* J.A. 13401–10.)

29. The spreadsheet included with the Notice identified Harris Teeter as one of the Kroger subsidiaries named as a defendant in the Durham County Action. (J.A. 13391 at ¶ 13; *see* J.A. 13414.)

30. Upon learning that Harris Teeter had been named as a defendant in the Durham County Action, Harris Teeter took no further action to report its potential opioid-related liability to insurers beyond assisting and cooperating with Kroger. (*See* J.A. 9809–10 at ¶¶ 13–16.) Further, prior to filing this action, neither Kroger nor Harris Teeter provided separate notice to Defendants expressly stating that any

claim was being made for the Durham County Action under any insurance policy issued to Harris Teeter. (J.A. 13392 at ¶ 19.)

31. Upon receiving the Notice, Defendants did not initiate a search for any insurance policies potentially issued to Harris Teeter. (J.A. 13392 at ¶ 20.)

**F.     The Global Settlement**

32. In March 2024, Kroger agreed to the terms of a written settlement agreement to resolve Opioid Lawsuits brought against Kroger and its subsidiaries by governmental entities nationwide (the Global Settlement). (J.A. 10992–11502; J.A. 46 at ¶ 70.) The Global Settlement became effective in December 2024. (J.A. 47 at ¶ 71.)

33. The parties to the Global Settlement are "Kroger and the Settling States," with "Kroger" being defined to mean The Kroger Co. (J.A. 10997 at § I.HH; J.A. 10999 at § I.AAA.)

34. The Global Settlement provides for a maximum payment to participating governmental entities of $1,372,800,000. (J.A. 10996 at § I.X; J.A. 46–47 at ¶ 70.) The Global Settlement payments are to be made in eleven annual payments into a settlement fund overseen by an administrator. (*See* J.A. 11006–18 at § IV; J.A. 54 at ¶ 90.) The Global Settlement obligates Kroger to pay the full settlement amount. (*See* J.A. 11006 at § IV.B.1 ("Kroger shall make eleven (11) Annual Remediation Payments . . . ."); J.A. 5679 (acknowledging "settlement funds would be paid by Kroger based on the payment schedule identified in [the Global Settlement]").)

35.     As of the filing of the Motions, the first two annual Global Settlement payments had been made.  (J.A. 54 at ¶ 91.)  The payments into the settlement fund have been made by Kroger, with no money flowing directly from Harris Teeter to the trust.  (*See* J.A. 13630–31 at 113:15–114:6; *see also* J.A. 6275 at 76:5–13; J.A. 6332 at 67:25–68:5.)

36.     The Global Settlement also provides certain "Released Entities" a release from liability for "Released Claims."  (*See* J.A. 11034–38 at § X; J.A. 50 at ¶ 79.)  Harris Teeter is named in the Global Settlement as a "Released Entity."  (J.A. 11333; J.A. 50 at ¶ 79.)

37.     As a result of the Global Settlement, participating governments—including Durham County, North Carolina—dismissed Kroger and its subsidiaries (including Harris Teeter) from their Opioid Lawsuits, including the Durham County Action.  (J.A. 4727–57; J.A. 48 at ¶ 73.)

## G.     Allocation of Global Settlement Liability to Harris Teeter

38.     After the agreement in principle on the monetary terms of the Global Settlement, defense and settlement counsel for Kroger assisted in determining what they considered an appropriate allocation of Global Settlement liability to both Harris Teeter and Roundy's—another of Kroger's subsidiaries—based on their respective percentage shares of opioids dispensed by Kroger entities in jurisdictions where Harris Teeter and Roundy's sold opioids.  (J.A. 57–58 at ¶¶ 95–96; *see also* J.A. 6279 at 91:13–24.)  Based on those calculations, the allocation of Harris Teeter's maximum

share of Global Settlement liability was eventually determined to be $60,493,575.49. (J.A. 61 at ¶ 102; J.A. 6335 at 81:1–6.)

39. It was also determined that the allocated share of Global Settlement liability would be recorded on the respective books of both Harris Teeter and Roundy's. (J.A. 59 at ¶ 99; J.A. 5526 at ¶ 4; J.A. 6335 at 81:4–8.)

40. This allocation was not made pursuant to any requirement in the Global Settlement or any terms of a separate contractual agreement between Kroger and Harris Teeter. (*See* J.A. 6279–80 at 93:24–94:13; J.A. 6332 at 66:7–12, 66:24–25.) Rather, the allocation was made as part of Kroger's own practice, as the parent company, of allocating settlement liability to its subsidiaries. (*See* J.A. 55 at ¶ 94; J.A. 6335 at 80:22–81:8; J.A. 6343 at 110:17–21.)

## III. PROCEDURAL BACKGROUND

41. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

42. On 8 November 2022, Harris Teeter and Kroger initiated this action upon the filing of the *Complaint*. (ECF No. 28.)

43. On 11 January 2023, Harris Teeter and Kroger filed an *Amended Complaint*, (ECF No. 25), asserting a claim for declaratory judgment against numerous insurance companies. (J.A. 10702–04 at ¶¶ 110–12.)

44. On 10 October 2023, the Court entered its *Order and Opinion on Defendants' Motion to Dismiss and Motion to Stay*, dismissing Kroger's claim for declaratory judgment. (ECF No. 245.)

45.     On 28 November 2023, Defendants filed an answer to the *Amended Complaint*, (ECF No. 250), and asserted counterclaims for declaratory judgment against Harris Teeter.  (J.A. 10834–43 at ¶¶ 45–89.)

46.     Thereafter, Harris Teeter—through periodic voluntary dismissals and stipulations of dismissal—further narrowed the scope of its claim by dismissing all but seven insurers.[3]  (*See* J.A. 5582–83 at ¶¶ 10(c), 11.)

47.     On 28 January 2026, Harris Teeter and Defendants filed the Motions.  (*See* Pls.' Mot.; Defs.' Mot.)  Following full briefing, the Court held a hearing on the Motions on 19 June 2026 (the Hearing), at which all parties were represented by counsel.  (*See* ECF No. 506.)

48.     The Motions are ripe for resolution.

## IV.     LEGAL STANDARD

49.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."  N.C.G.S. § 1A-1, Rule 56(c).  "A 'genuine issue' is one that can be maintained by substantial evidence."  *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference."  *Head v. Gould Killian CPA Grp., P.A.*,

---

[3] As previously noted herein, (*supra* ¶ 1 n.1), three additional insurers that joined in the filing of Defendants' Motion were voluntarily dismissed from this action while the Motions were briefing.

371 N.C. 2, 8 (2018) (citation modified) (quoting *Ussery v. Branch Banking & Tr. Co.*, 386 N.C. 325, 335 (2015)).

50.    The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008), *aff'd* 363 N.C. 255 (2009).  The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense . . . or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim[.]" *Dobson*, 352 N.C. at 83 (citations omitted).

51.    "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85 (2000) (citations omitted).  The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83 (citation omitted).  However, the nonmovant

> may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C.G.S. § 1A-1, Rule 56(e).

52.     "For affirmative summary judgment on a party's own claim, the burden is heightened." *Futures Grp., Inc. v. Brosnan*, 2023 NCBC LEXIS 7, at *4 (N.C. Super. Ct. Jan. 19, 2023); *see also Brooks v. Mount Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 728 (1980). The movant "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *accord Kidd v. Early*, 289 N.C. 343, 370 (1976). Consequently, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

53.     "Summary judgment may be granted on a claim for declaratory judgment if there remain no issues of material fact and either party is entitled to relief as a matter of law." *Lumbee Enter. Dev., Inc. v. Lumbee Reg'l Dev. Ass'n*, 2020 NCBC LEXIS 61, at *21 (N.C. Super. Ct. May 8, 2020) (citing *Smith v. Marez*, 217 N.C. App. 267, 270 (2011)).

## V.     ANALYSIS

54.     Harris Teeter, through Plaintiffs' Motion, seeks approximately sixteen (16) declarations relating to the policies at issue and the Global Settlement. (*See* Pls.' Mot. 2–6.) Harris Teeter contends that granting its request for such declarations would resolve all counterclaims asserted against it by Defendants and many of Defendants' affirmative defenses. (*See* Pls.' Mot. 6.)

55.    Defendants, through Defendants' Motion, seek a declaration that they owe no insurance coverage to Harris Teeter for amounts Kroger paid to resolve opioid-related claims through the Global Settlement.  (Defs.' Mot. 1.)  Defendants contend Harris Teeter cannot establish coverage under the relevant insurance policies because (1) Harris Teeter has no legal obligation to pay any damages, (2) the policies at issue do not cover the underlying public nuisance claims because the policies require damages "because of bodily injury," and (3) Harris Teeter failed to comply with the policies' notice requirement.  (Insurers' Mem. L. Supp. Defs.' Mot. 2–3, ECF No. 499 [Defs.' Br. Supp.].)  As any one of these issues would be dispositive, the Court addresses Defendants' Motion first.

56.    Under North Carolina law, "[p]rovisions of insurance policies extending coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction."  *AP Atl., Inc. v. Crescent Univ. City Venture, LLC*, 2017 NCBC LEXIS 59, at *12 (N.C. Super. Ct. July 13, 2017) (citation modified) (citing *State Cap. Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538 (1986)).

57.    "A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court."  *Id.* (quoting *Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 633 (2009)).  "Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422 (2001).

58.    Defendants first argue that Harris Teeter is not entitled to coverage under the CGL policies because Harris Teeter was sued by only one governmental

plaintiff—in the Durham County Action—and that action was dismissed, as a result of the Global Settlement, without any legal liability imposed on Harris Teeter. (Defs.' Br. Supp. 2.) Specifically, Defendants argue it is undisputed that the Global Settlement "(1) imposed payment obligations on Kroger alone and (2) expressly released [Harris Teeter] from all opioid-related claims without requiring it to pay a single dollar." (Defs.' Br. Supp. 16–17.) Thus, according to Defendants, "no claimant retains a viable claim or enforceable remedy against [Harris Teeter] under the Global Settlement," and Harris Teeter never became "legally obligated to pay" damages in connection with any of the Opioid Lawsuits. (Defs.' Br. Supp. 18–19.) Defendants further contend that the internal allocation of Global Settlement liability to Harris Teeter by Kroger "does not create an enforceable, insurable tort liability, much less one imposed by law because of bodily injury allegedly caused by [Harris Teeter]." (Defs.' Br. Supp. 3, 22.)

59. Harris Teeter contends that "where a parent corporation and its subsidiaries use a centralized treasury function and routinely account for the subsidiaries' liabilities . . ., [Harris Teeter] reasonably understood it had a 'legal obligation to pay' its share of tort liability[.]" (Pls.' Resp. Defs.' Mot. 19, ECF No. 497 [Pls.' Br. Opp'n].) The Court understands the crux of Harris Teeter's argument on this issue to be that, regardless of the fact that Kroger transmitted the Global Settlement payments from a centralized treasury fund, such payments were still made in satisfaction of Harris Teeter's legal obligation to pay damages for its alleged opioid-related tort liability. (*See* Pls.' Br. Opp'n 27.)

60.     The Global Settlement does not define the phrase "legally obligated to pay," and, therefore, the Court must read the phrase in accordance with its ordinary meaning. *See Pulte Home Corp. v. Am. S. Ins. Co.*, 185 N.C. App. 162, 167 (2007).

61.     The ordinary meaning of the phrase "legally obligated to pay" in the context of a CGL policy has previously been considered by the North Carolina Court of Appeals. *Lida Mfg. Co. v. U.S. Fire Ins. Co.*, 116 N.C. App. 592 (1994). In *Lida*, the court concluded that the ordinary meaning of the phrase "legally obligated to pay as damages" requires that a third party have (i) a cause of action and (ii) a remedy by which he can reduce his right to damage to judgment. *Id.* at 595 (citing *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 293–94 (1989)). In so holding, the court noted that an insurance company's liability is "derivative in nature; therefore, its liability depends on whether or not its insured is liable to the plaintiff." *Id.* (citation modified) (quoting *Buchanan v. Buchanan*, 83 N.C. App. 428, 429 (1986)).

62.     Applying these principles, the court in *Lida* concluded that where a third party's settlement of the underlying claims included a covenant not to execute a confession of judgment against the insured, the insurance company's obligations under the CGL policy were extinguished. *Id.* at 597; *see also Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 661 (1998) (holding insurer's obligation extinguished where covenant not to execute included in settlement agreement rendered the insured not "legally obligated to pay" damages); *N.C. Farm Bureau Mut. Ins. Co. v. Smith*, 227 N.C. App. 288, 291–92 (2013).

63. Further, this Court has previously concluded that, in light of *Lida*, the phrase "legally obligated to pay as damages" is unambiguous. *AP Atl.*, 2017 NCBC LEXIS 59, at *14 (citing *Dockery*, 144 N.C. App. at 422). Applying the meaning of "legally obligated to pay" set forth in *Lida*, the Court in *AP Atlantic* held that the insured failed to allege its legal obligation to pay damages where it did not allege that any third party had a cause of action against it and instead alleged only that it was obligated to repair property damage because of potential "life-safety consequences." *Id.* at *15–16. The Court noted, however, that the court in *Lida* "did not hold that the cause of action had to be asserted in pending litigation or that a judgment had to be rendered for an insured to be 'legally obligated to pay as damages.' " *Id.* at *14–15. Thus, where an insured alleged that it was contractually obligated to pay approximately $3.3 million in claims to customers, this Court held the insured had adequately alleged the existence of a legal obligation to pay damages, even though no third party had obtained a judgment or litigated claims against it. *Lineage Logistics, LLC v. Nat'l Union Fire Ins. Co.*, 2023 NCBC LEXIS 97, at *24 (N.C. Super. Ct. Aug. 10, 2023).

64. The undisputed facts in the record are as follows:

65. Harris Teeter is not a party to the Global Settlement. (*See* J.A. 10997 at § I.HH; J.A. 10999 at § I.AAA.) Rather, Harris Teeter is a "Released Entity" that received a complete release from liability under the Global Settlement. (J.A. 11333; J.A. 50 at ¶ 79.)

66.     Per the express terms of the Global Settlement, only Kroger and the Settling States are parties to the agreement, and Kroger is the only entity that is legally obligated to pay the full settlement amount.  (J.A. 10997 at § I.HH; J.A. 10999 at § I.AAA; J.A. 11006 at § IV.B.1 ("Kroger shall make eleven (11) Annual Remediation Payments . . . ."); J.A. 5679 (acknowledging "settlement funds would be paid by Kroger based on the payment schedule identified in [the Global Settlement]").)

67.     Any "allocation" of a portion of the Global Settlement liability to Harris Teeter was made pursuant to Kroger's internal processes—not to the terms of the Global Settlement, any contractual agreement between Kroger and Harris Teeter, or any other binding legal or contractual obligation.  (*See* J.A. 6279–80 at 93:24–94:13; J.A. 6332 at 66:7–12, 66:24–25; J.A. 55 at ¶ 94; J.A. 6335 at 80:22–81:8; J.A. 6343 at 110:17–21.)  In fact, Harris Teeter admits it has no legal obligation to pay any damages to Kroger.  (J.A. 13703–06.)

68.     Global Settlement payments, which are only required to be made by Kroger, are made by Kroger from a consolidated treasury fund.  (J.A. 13630–31 at 113:15–114:6; *see also* J.A. 6275 at 76:5–13; J.A. 6332 at 67:25–68:5.)  Harris Teeter does not make any payments itself.  (J.A. 6275 at 76:1–6.)  After payments are made by Kroger into the settlement trust, an accounting entry is made on Harris Teeter's books to reduce its recorded liability by its "allocated" share of that payment.  (*See* J.A. 6342 at 108:14–109:14.)

69.    As Kroger is the only entity that is a party to the Global Settlement, any enforcement rights of the governmental plaintiffs lie against Kroger, not Harris Teeter.  Thus, no governmental plaintiff participating in the Global Settlement has any remedy enforceable against Harris Teeter.  *See Lida*, 116 N.C. App. at 595.

70.    Harris Teeter attempts to distinguish this case from those following the decision in *Lida*, in which covenants not to execute were involved, by arguing that the collusion concerns addressed in *Lida* are not present here. (Pls.' Br. Opp'n 25–27.) While the Court acknowledges that the factual scenario at issue here is not identical to that of *Lida* or the cases following the *Lida* decision, the Court notes that, ultimately, each of those cases turned on the fact that following entry of a settlement which contained a covenant not to execute, the insured no longer had any obligation to pay damages to any third party.  *See, e.g.*, *Lida*, 116 N.C. App. at 597; *Terrell*, 131 N.C. App. at 661.  The facts here are not dissimilar.  Upon execution of the Global Settlement, which by its express terms does not bind Harris Teeter as a party or obligate Harris Teeter to pay any portion of the settlement amount, Harris Teeter no longer had any binding legal or contractual obligation to pay damages to the governmental plaintiffs.  Thus, as in *Lida*, the Court determines that Harris Teeter is not "legally obligated to pay" any damages pursuant to the terms of the Global Settlement, and any obligations Defendants may have had to indemnify Harris Teeter under the policies at issue have been extinguished.

## VI. CONCLUSION

71.    For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion on the basis that Harris Teeter is not "legally obligated to pay" any damages pursuant to the Global Settlement. As the Court's determination of that single issue is dispositive, the Court need not, and does not, address the remaining issues raised in the Motions. Accordingly, the Court **DECLARES** that Defendants owe no insurance coverage to Harris Teeter for amounts Kroger paid pursuant to the Global Settlement.

72.    Plaintiffs' Motion is hereby **DENIED**.

73.    As there are no remaining issues to be tried at this time, summary judgment is **ENTERED** in favor of Defendants accordingly.

74.    The costs of this action are taxed to Harris Teeter.

    **IT IS SO ORDERED**, this the 24th day of July, 2026.


                                        /s/ Michael L. Robinson
                                        Michael L. Robinson
                                        Chief Business Court Judge